IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | | CRIMINAL ACTION |
| | | NO. 12-462 |
| v. | : | |
| | | |
| ROBERT MULGREW, | : | |
|     Petitioner. | | |

## **MEMORANDUM**

**Jones, II   J.**                                                                                                       **August 12, 2016**

### I.   INTRODUCTION

Petitioner Robert Mulgrew filed a *pro se* Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 122), in which he alleges a violation of his Sixth Amendment Rights due to ineffective assistance of counsel during the pretrial, plea negotiation, and sentencing stages of this case. Petitioner claims that because of counsel's ineffectiveness, he received a more severe sentence than he expected.

For the reasons set forth herein, Petitioner's Motion shall be denied.

### II.   BACKGROUND

On September 19, 2013 Petitioner plead guilty to Counts 1 and 33 of an Indictment charging mail fraud and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349; and, filing false personal income tax returns for the 2006 tax year, in violation of 26 U.S.C. §§ 7206(1). Petitioner was placed under oath and the court proceeded to administer a colloquy in accordance with Federal Rule of Criminal Procedure 11. (Plea Hr'g Tr. 7.) Petitioner was informed that by entering a plea of guilty, a statutory maximum sentence of twenty-three

1

(23) years imprisonment, five (5) years supervised release, a $500,000 fine, a $200 special assessment, and restitution to the Internal Revenue Service of all taxes, penalties, and interest due may be imposed. (Plea Agreement at 2; Plea. Hr'g Tr. 19:2-20:7.) The Plea Agreement additionally contained a provision prohibiting Petitioner from withdrawing his plea if the sentencing judge "declined to follow any recommendation, motion, or stipulation by the parties to [the] agreement" and further provided that the sentencing court did not promise or guarantee any sentence. (Plea Agreement at 3.)

During the colloquy, Petitioner was clearly informed that if at any time during the questioning he required consultation with counsel, he was free to notify the court and a break would be taken in the proceedings for him to consult with counsel in private. (Plea Hr'g Tr. 8:2.) Petitioner replied that he understood he may do so. (Plea Hr'g Tr. 8:9.) The court asked Petitioner if he had received and read a copy of the Indictment and whether his attorney had gone over all the charges in the Indictment, as well as the meaning of each charge to his satisfaction. (Plea Hr'g Tr. 10:17-20, 17:21-23.) Petitioner replied that he had received and read a copy of the Indictment and that his counsel had satisfactorily explained and answered all of his questions regarding the content of the Indictment and charges. (Plea Hr'g Tr. 10:21-11:6, 17:24-25.) Petitioner stated before the court that he fully understood the elements of the charges, that he had no questions whatsoever regarding the content of the Indictment, *and that he was satisfied with the representation of counsel*. (Plea Hr'g Tr. 11:7-15) (emphasis added).

The court asked Petitioner whether he had read the Plea Agreement and discussed same with counsel. Petitioner stated that had both read and discussed the Plea Agreement. (Plea Hr'g Tr. 12:3-7, 14:9-17.) The court then asked Petitioner whether he understood that although the parties had entered into stipulations respecting application of the Sentencing Guidelines, said

stipulations were not binding on the Probation Office or the court, and if he disagreed with either probation's presentence report or the court's imposition of a particular sentence, he could not withdraw his guilty plea. Petitioner stated that he understood these conditions. (Plea Hr'g Tr. 13:7-19, 21:5-23:22); *see also* Plea Agreement ¶ 7 ("The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.").

During the colloquy, the court repeatedly asked Petitioner if he had voluntarily signed and entered into the Plea Agreement without any promises or coercion; Petitioner confirmed that he had, and was voluntarily and freely pleading guilty to these felony charges. (Plea Hr'g Tr. 12:8-14, 14:2-8, 14:18-15:4, 33:10-25); *see also* Plea Agreement ¶ 14 ("It is agreed that the parties' plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.").

The court recited a litany of constitutional rights that Petitioner was waiving as a result of pleading guilty, including an extensive waiver of Petitioner's right to appeal or collaterally attack the conviction or sentence. (Plea Hr'g Tr. 15:5-9, 24:12-28; Plea Agreement ¶ 10.) The court's colloquy specifically included a thorough explanation of Petitioner's Appellate Rights Waiver. (Plea Hr'g Tr. 29:23-30:9.)

After an explanation of each and every aspect of Petitioner's Plea Agreement, the following exchange took place:

>  COURT: Sir, having heard from me what your rights are if you plead not guilty and what may occur if you plead guilty, do you still want to give up your right to a trial and plead guilty?

3

| | |
|---|---|
| DEFENDANT: | Yes, I do, Your Honor. |
| COURT: | Therefore, Mr. Mulgrew, based upon your represent—the representation made by your counsel, do you otherwise agree with this plea of guilty? |
| DEFENDANT: | Yes, I do, Your Honor. |
| COURT: | And, Sir, given everything that I've reviewed with here—with you here today, do you still wish to enter pleas of guilty? |
| DEFENDANT: | Yes, I do, Your Honor. |
| COURT: | Very well. Mr. Robert Mulgrew, sir, how do you wish to plead? |
| DEFENDANT: | I wish to plead guilty to these charges, Your Honor. |
| COURT: | The Court finds that the defendant is fully alert, competent, and capable of entering an informed plea; the plea is knowing and voluntary and not the result of force or threats or any promises other than have been included in this record, the plea is supported by an independent basis in fact containing each of the essential elements of the offenses to which the defendant has plead[ed] guilty; the defendant understands the charges, his legal rights, and the maximum possible penalties; and the defendant understands that he is giving up his right to a trial. Therefore, the defendant's plea of guilty is accepted. The Court adjudges the defendant, Robert Mulgrew, guilty of one count of mail fraud and conspiracy to commit—commit mail fraud, in violation of 18, United States Code, Sections 1341 and 49; Count 33, filing false personal income tax returns, in violation of 26, United States Code, Section 206(1). |

(Plea Hr'g Tr. 30:10-14, 33:1-3, 33:9-13, 35:6-9, 36:2-21); *see also* Plea Agreement ¶ 13 ("The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and his lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.").

On August 6, 2014, after careful consideration of the Presentence Report, comprehensive memos by counsel, the Sentencing Guidelines, witness testimony, and numerous letters of

support, this Court sentenced Petitioner to a term of imprisonment of thirty (30) months on each of Counts 1 and 33 (to run concurrently), followed by three (3) years of supervised release on Count I and one (1) year on Count 33, to run concurrently. (Sent. Hr'g Tr. 108:10-25, 109:1-25, 110:1-25, 111:1-4; ECF No. 112.)

### III. STANDARD OF REVIEW

A Motion to Vacate, Set Aside, and/or Correct Sentence under 28 U.S.C. § 2255 may be granted when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). When assessing a §2255 Motion, the court must grant an evidentiary hearing when the records in the case are "inconclusive on the issue of whether movant is entitled to relief." *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005) (citing *Solis v. United States*, 252 F.3d 289, 294-95 (3d Cir. 2001)). "The standard governing…requests [for evidentiary hearings] establishes a reasonably low threshold for habeas petitioners to meet." *Id.* (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)). A *pro se* habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *Lewis v. Attorney General*, 878 F.2d 714, 721-22 (3d Cir. 1989). A §2255 Motion "can be dismissed without a hearing [only] if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. McCoy*, 410 F.3d at 134 (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

To prove that counsel was ineffective, Petitioner must establish that: (1) "counsel's performance was deficient[;]" and (2) the deficient performance prejudiced the defense."

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Jansen v. United States*, 369 F.3d 237, 243 (3d. Cir. 2004). Deficient performance "requires showing that counsel made errors so serious that he or she was not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'" *Id.* In essence, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688.

Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 690 (quoting *Michel v. Louisiana*, 250 U.S. 91, 101 (1955)). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013) (quoting *Strickland*, 466 U.S. at 689). In raising an ineffective assistance claim, Petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." *Strickland*, 466 U.S. at 690. Next, the court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." *Id*.

To establish prejudice, Petitioner must demonstrate that counsel's errors were serious enough to deprive him of a fair trial—that counsel's alleged errors "actually had an adverse effect on the defense." *Id*. at 687, 693. In other words, "[t]he defendant must show that there is a reasonable probability that, ***but for*** counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694 (emphasis added).

With specific regard to situations such as this where a Petitioner pled guilty, the Third Circuit has held that a waiver of appellate rights or rights to collaterally attack a conviction or sentence shall be enforced so long as it was entered knowingly and voluntarily and enforcement of the waiver would not create a miscarriage of justice. *See United States v. Khattak*, 273 F.3d

557, 563 (3d Cir. 2001). Accordingly, a court must analyze whether (1) Petitioner entered his Plea Agreement "knowingly and voluntarily," and (2) whether the enforcement of the waiver would "work a miscarriage of justice." *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008).[1]

## IV. DISCUSSION

As noted at the outset, Petitioner raises various claims of ineffectiveness pertaining to counsel's performance prior to trial,[2] during the plea negotiation process, and during the sentencing phase.

However, review of all of the documents submitted by Petitioner clearly establishes the crux of his arguments to be his dissatisfaction with the sentence imposed by this Court.

### i. Claims of Ineffectiveness Prior to Trial & During Plea Negotiations

Petitioner alleges that counsel's ineffectiveness led to him unknowingly and involuntarily enter into the Plea Agreement he finds himself bound by today. (Pet'r's Suppl. Br. Supp. Mot. Vac. 1; Resp. Mot. Vac. 4.)  Specifically, Petitioner claims his counsel:

- "delayed the investigation of the case," thereby resulting in denial of an additional point reduction for entry of a timely plea (Pet.'r's Mot. Vac. 13);

- failed "to obtain a more favorable terms" regarding stipulations as to applicable Sentencing Guideline ranges, appellate rights, the ability to seek a downward variance, and home confinement (Pet.'r's Mot. Vac. 13-14);

---

[1] In this particular case, Petitioner's Plea Agreement specifically provided for the right to challenge the effectiveness of his attorney's assistance.

[2] This case was designated "complex" and was managed accordingly. Petitioner did not elect to plead guilty until after a jury had been chosen and the trial was in its second day. As such, this Court notes that it would have been within its discretion to reject even a two-point reduction for acceptance of responsibility at the time of sentencing. *See United States v. Taylor,* 184 F. App'x 146, 148 (3d Cir. 2006) (affirming district court's rejection of point reduction for acceptance of responsibility where the defendant pleaded guilty on the first day of trial, thereby requiring the government to prepare for litigation).

- failed to protect his interests during the grand jury proceedings that preceded his indictment (Pet.'r's Mot. Suppl. 5-6);

- failed to obtain evidence submitted by the government during trial (Pet.'r's Mot. Suppl. 6); and,

- was "reluctant" to inform the court that four of the government's fourteen witnesses were deceased (Pet.'r's Mot. Suppl. 4).[3]

Petitioner claims that because of counsel's ineffectiveness, he did not enter into the Plea Agreement knowingly and voluntarily. In light of the court's painstakingly thorough colloquy—including inquiries regarding Petitioner's satisfaction with counsel—his current claim of ineffectiveness is belied by the record:

> COURT: Are you satisfied with the representation your counsel, Ms. Halim, has provided you up to this point in time?
>
> DEFENDANT: Yes, I am, Your Honor.
>
> * * * *
>
> COURT: Now, Mr. Mulgrew, it is my understanding that you have entered into a plea agreement with the Government as to the following with the Government as to the following specific charges:
>> Count, 1, conspiracy to commit mail fraud and mail fraud, in violation of 18, United States Code, Sections 1341 and 1349, and Count 33, filing false personal income tax returns, in violation of 26, United States Code, Section 7206(1).
>
> Sir, do you have the agreement before you?
>
> DEFENDANT: Yes, I do, Your Honor.
>
> COURT: Did you read the agreement?

---

[3] Petitioner also claims counsel was ineffective due to her ":inability to explain the amount of debris that was disposed of by FDS." (ECF No. 134 at 6.) However, he fails to provide context for this claim. In any event, it is without merit, as Petitioner cannot show prejudice.

8

| | | |
|---|---|---|
| DEFENDANT: | Yes, I have. | |
| COURT: | Have you thoroughly discussed the agreement with your counsel? | |
| DEFENDANT: | Yes, I have, Your Honor. | |
| COURT: | And, sir, did you voluntarily sign the agreement? | |
| DEFENDANT: | Yes, I have, Your Honor. | |
| COURT: | Did anyone force you in any way to sign this agreement? | |
| DEFENDANT: | No, Your Honor. | |
| COURT: | Now, have you had enough time to talk this agreement over with your counsel? | |
| DEFENDANT: | Yes, I have, Your Honor. | |
| COURT: | And do you fully understand what you're doing at this time? | |
| DEFENDANT: | Yes, I do, Your Honor. | |

(Plea Hr'g Tr. 11:12-12:19.)

As evidenced by the record, Petitioner asserted full acceptance of the terms of the Plea Agreement at the Plea Hearing. Petitioner repeatedly answered—under oath—that he was satisfied with counsel. This, coupled with the fact that counsel fully discussed and explained the Plea Agreement in advance of its acceptance, renders his pre-sentence ineffectiveness claims meritless.

Importantly, Petitioner has already realized the benefit of the plea deal negotiated by and between the government and Petitioner's counsel. In exchange for Petitioner's plea of guilty, the government: (1) dismissed all charges against Mr. Mulgrew's wife/co-defendant; (2) dismissed numerous other counts against Petitioner that were remaining in the Indictment; (3) stipulated to a loss amount that was lower than what the government intended to prove at trial and pursue at

sentencing; (4) provided Petitioner with a 2-level downward adjustment for acceptance of responsibility under the Guidelines—despite Petitioner's late decision to do so; and, (5) agreed to an appellate waiver exception which would permit Petitioner to contest his counsel's effectiveness. [4]  Clearly, Petitioner has not been prejudiced by any alleged failure of counsel and his claim that her ineffectiveness led to his involuntary and unknowing acceptance of the Plea is without merit.

### ii. Claims of Ineffectiveness at Sentencing

Petitioner maintains he accepted the Plea Agreement under false and unfulfilled promises made by counsel to "challenge the loss, submit mitigating evidence and present argument and all character references to the court at sentencing." (Pet'r's Suppl. Br. 3.)  Specifically, he argues that counsel assured and promised him the Guidelines would be "12-18 months and that a downward departure would be requested." (Pet'r's Suppl. Br. 3.) He similarly claims he "was mislead [sic] as to his sentencing exposure and how his attorney would address the loss figures to mitigate or minimize his sentence."  (Pet.'r's Repl. 5.)

The expectations set forth in Petitioner's motion are incongruous with the signed Plea Agreement and his affirmations as recorded during the Plea Colloquy. With regard to the Plea Agreement, Paragraph 8 provides in pertinent part that "[t]he parties agree and stipulate that: the fraud loss caused in furtherance of the criminal activity undertaken by the defendant will be determined based on all the facts set forth in the indictment." (Plea Agreement ¶ 8(a)) (redactions omitted).   As such—and to the extent they were not contained in the indictment—

---

[4] On the morning of sentencing, Petitioner tendered a check in the amount of $1,023,314.43 to the Internal Revenue Service to cover the tax losses, including penalties and interest.  (Sent. Hr'g 9:12-15.)  This, coupled with the fact that the amount of the restitution owed to the Commonwealth of Pennsylvania was so great, were the bases for court's decision to *not* impose a fine. (Sent. Hr'g 109:21-25.)

counsel would have been prohibited from litigating Petitioner's version of facts regarding loss.

With regard to the plea colloquy in court, Petitioner affirmed that he understood that his sentence was covered by the Guidelines, that the sentencing judge was required to consider the Guidelines but that they were not binding, and that the sentencing judge may depart from the Guidelines under certain circumstances:

> COURT: Do you understand that this Court could, in appropriate circumstances, impose a sentence which is either more severe or less severe than that which the guidelines recommend?
>
> DEFENDANT: Yes, I do, Your Honor.
>
> COURT: Do you understand, sir, that on the basis of a plea of guilty, you may receive a sentence up to the maximum permitted by law?
>
> DEFENDANT: Yes, I do, Your Honor.
>
> COURT: Sir, do you understand that you will not be entitled to withdraw any guilty plea if I impose a more severe sentence than you expect or that – what you might or your – or what someone else might recommend?
>
> DEFENDANT: Yes, I do, Your Honor.

(Plea Hr'g Tr. 22:21-23:10.)

Furthermore, Petitioner expressly acknowledged his understanding that while the court would consider any stipulations or sentence that both the defense and the Government might have agreed to, the court was not bound by the parties' agreement(s). (Plea Hr'g Tr. 23:11-22.) Nowhere in the Plea Agreement or during the Plea Colloquy is it stated by counsel or the Government that the court would be bound or limited to a sentence between 12 and 18 months, and at no time during execution of the agreement or during the colloquy did Petitioner express

11

any belief as to same.[5]  Instead, the record unequivocally demonstrates that Petitioner knowingly and voluntarily entered into the Plea Agreement which clearly stated that he was subject to the "total maximum sentence [of] 23 years imprisonment, five years supervised release, a $500,000 fine, a $200 special assessment, and restitution to the Internal Revenue service of all taxes due, penalties, and interest. (Plea Agreement ¶ 3.)

Contrary to any promises that Petitioner now asserts were made to him by counsel,[6] Petitioner repeatedly assured the court that he was agreeing to plead guilty without any such promises or coercion:

> COURT: Mr. Mulgrew, other than the terms set forth in the written plea agreement and what counsel for the Government has articulated this date, did anyone promise you anything or offer you anything else to get you to plead guilty?
>
> DEFENDANT: No, they have not, Your Honor.

(Plea Hr'g Tr. 14:2-8.)

> COURT: Okay. And, once again, sir, has the decision to plead guilty been made by you and solely by you voluntarily and of your own free will?
>
> DEFENDANT: Yes, it has, Your Honor.
>
> COURT: No coercion?
>
> DEFENDANT: No.
>
> COURT: No force?
>
> DEFENDANT: Nope.

---

[5] Counsel for Petitioner did in fact argue that the court sentence below the recommended range and suggested sentencing alternatives such as home confinement, probation, or a shorter period of incarceration.  (Sent. Hr'g Tr. 90:16-23, 91:1-4.)

[6] Most notably, Petitioner claims "assurances" were made by counsel prior to execution of the Plea Agreement; "promises made repeatedly went unfulfilled[;]" and, promises "were used to mislead [Petitioner] as to the extent of his sentencing exposure."  (Pet.'r's Repl. 8.)

>   MR. GRAY:        No promises other than what's been indicated on this record and within the plea agreement?
>
>   DEFENDANT:       Yes.

(Plea Hr'g Tr. 33:14-25.)

At the time of Petitioner's plea, there had been no agreement regarding the "exact nature and amount of either the income not reported or the false deductions" but instead, the defense and the Government agreed to "work out the numbers . . . prior to sentencing." (Plea Hr'g Tr. 32:10-21.) In the Sentencing Memorandum filed on August 4, 2014 by Petitioner's counsel, she confirmed that the parties had reached an agreement concerning the losses. (Def.'s Sent. Mem. 2.) At the Sentencing Hearing, the court reiterated the agreed upon sum of $199,274 without any visible indication of disagreement by Petitioner or objection by counsel. (Sent. Hr'g Tr. 110:9-18.) Petitioner contends that because there were no losses (and even if there were losses they were "de minimis"), he expected his sentence to be twelve (12) to eighteen (18) months with the possibility of a downward departure "based upon submissions." (Pet'r's Suppl. Br. Supp. Mot. Vac. 2.)  However, as this Court accurately noted at the sentencing:

> The nature and circumstances [of] Mr. Mulgrew's offenses are clear.  He submitted to the state fraudulent grant applications and false reports in which he claimed he would and had used taxpayer supported grant funds to rehabilitate Dickinson Square Park and the surrounding neighborhood.
>
> * * * *
>
> [T]he defendant admitted that he misappropriated—and in the government's language, stole—tens of thousands of dollars to pay for his truck, gasoline in a vehicle that was operated by his spouse, and clearly, additional impermissible items, like donations to his coworker's charity, work boots, phone books, phone service, excuse me, and certain other expenditures.
>
> * * * *
>
> He egregiously breached the public's trust by misusing tens of thousands of dollars in grant funds to pay for his relatives, his associates, and his friends' associates, often for minor constituent services, such as cleanup projects and other "make-work."

> It is arguable that Mr. Mulgrew's conduct was blatant, particularly when it came to or comes to the ongoing nature of these offenses. Again, as the government has argued, he did carry out these deeds over a period of years and consistently filed false joint income tax returns, arguably cheating the government out of nearly $70,000 income tax payments. And again, what is problematic to the Court is that this is not a one-time occurrence, rather a prolonged criminal activity.

(Sent. Hr'g Tr. 101:3-18, 21-25; 102:1-10.)

While Petitioner emphasizes the importance of the loss calculations, this Court made clear during sentencing:

> The financial losses caused by Mr. Mulgrew do not represent the complete wrong he perpetrated. ***Losses aside***, his corruption and abuse of the tax-payer funded grant system ***standing alone*** is most egregious. The general public needs to know that those convicted for public corruption will be held accountable by the criminal justice system and in this case, the end can never justify the means.

(Sent. Hr'g Tr. 103:23, 104:1-4) (emphasis added).

In short, Petitioner's fraud and the resulting loss to the government were not "de minimus" as he now claims. Regardless, the court viewed the violation of the public trust as equally—if not more—egregious than the government's actual losses through Petitioner's fraudulent scheme and appropriately took this into consideration in determining Petitioner's sentence.

To the extent Petitioner generally maintains that his attorney was ineffective for failing to present unspecified materials, evidence, and witnesses at sentencing, his counsel did motion for a downward variance and did provide the court with numerous character witnesses and statements attesting to Petitioner's many good deeds in the community, which this Court acknowledged and duly considered. (Sent. Hr'g Tr. 102:11-17, 107:21-25, 108:1-4.) As was wholly within its discretion and out of the control of counsel, this Court ultimately determined that a downward variance was not warranted properly and denied Petitioner's motion for same. Moreover, for

reasons stated clearly on the record, any motion for downward departure under Section 2B1.1 of the Sentencing Guidelines would have been similarly rejected by this Court.[7] Counsel cannot be deemed ineffective for failing to bring meritless motions and challenges. *Strickland v. Washington*, 466 U.S. 668, 699 (1984) (finding that counsel's strategy at sentencing and "the decision not to seek more character or psychological evidence" was reasonable and does not constitute ineffective assistance).

It is mandatory that the court "sentence within the applicable Guideline Range, unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." *See* 18 U.S.C. § 3553(b); *see also United States v. Uca*, 867 F.2d 783,786 (3d Cir. 1989). Here, the court took into account the clear "nature and circumstances" of Petitioner's offenses; namely, submitting fraudulent grant applications and personally capitalizing on the submission of false reports and receipts. (Sent. Hr'g 110:19-25, 111:1.) The court was particularly troubled that Petitioner's conduct was not a "one-time occurrence," but rather, a "prolonged criminal activity." (Sent. Hr'g 102:8-10.) Accordingly, Petitioner's assertion that "if not for counsel's errors[,] it is likely that the Petitioner would have received a more lenient sentence" is wholly without merit. (Pet.'r's Repl. 10.)

---

[7] The Comment to Section 2B1.1 discusses considerations for downward departures with regard to loss calculations: "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n. 20(c).

While the parties herein disagreed with the amounts of the grant fraud and taxes losses contained in the Presentence Report,[8] they stipulated to an amount of $199,274 prior to sentencing and Petitioner did not contest this figure, despite the opportunity to do so. (Sent. Hr'g Tr. 110:9-22.)[9] As a result, any dissatisfaction Petitioner might now have with the final agreed upon amounts of the fraud and tax losses have been waived.  Moreover, for reasons discussed more fully hereinabove, framing the total loss issue in the context of an ineffectiveness claim does not render it meritorious.  The adjusted Guidelines range applicable to Petitioner after the parties reached a Stipulation regarding the loss amounts was 27 to 33 months imprisonment. This Court sentenced Petitioner well within this range and well within its discretion.  [10]Accordingly, Petitioner has not demonstrated that but for counsel's alleged ineffectiveness, the outcome would have been different.

---

[8] The Revised Presentence Report dated January 29, 2014 identified numerous objections to the fraud and tax losses, as lodged by Petitioner's counsel.  The ultimate calculations reached by the investigating officer consisted of $231,988 in fraud loss and $66,201 in tax loss.

[9] This Court further notes that although Petitioner exercised his right to allocution, he never spoke of any disagreement with the stipulated amount.

[10] Moreover, although Petitioner was facing a statutory maximum sentence of twenty-three (23) years imprisonment, five (5) years of supervised release, a $500,000 fine, a $200 special assessment; and, restitution to the Internal Revenue Service of all taxes due, penalties, and interest, this Court ultimately imposed a sentence of thirty (30) months imprisonment, three (3) years of supervised release, no fine, a $200 special assessment, and restitution in the amount of $199,274.00. On the morning of sentencing, Petitioner tendered a check in the amount of $1,023,314.43 to the Internal Revenue Service to cover the tax losses, including penalties and interest.  (Sent. Hr'g 9:12-15.)  This, coupled with the fact that the amount of the restitution owed to the Commonwealth of Pennsylvania was so great, were the bases for court's decision to not impose a fine. (Sent. Hr'g 109:21-25.)  This Court further notes that it accommodated Petitioner with a surrender date that enabled him to be present with his daughter for the birth of her twin babies.

### V.   CONCLUSION

Petitioner was adequately warned of the protections and rights he was waiving by entering into a Plea Agreement with the government and entering a plea of guilty before the court.  Contrary to his current contention, Petitioner did so knowingly and voluntarily. Petitioner has demonstrated no prejudice by reason of the manner in which counsel represented him throughout the proceedings and for these reasons, his Motion shall be denied.

A Certificate of Appealability shall not issue because this Court finds that Petitioner has failed to make a substantial showing of the denial of any constitutional right and that reasonable jurists would disagree with this Court's holding. *See* 28 U.S.C. § 2253(c)(2); *Keitt v. United States Parole Comm'n*, 238 F. App'x 755, 758 (3d Cir. 2007) ("To obtain a certificate of appealability, [a petitioner] must make a substantial showing of a denial of a constitutional right. To show such a denial, [the petitioner] must demonstrate that reasonable jurists could disagree about whether the district court's resolution of his claims was correct.") (internal citations omitted).

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II   J.